Case No. 23-5700

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Christie Andrews,
*Plaintiff-Appellant,*

v.

Tri Star Sports and Entertainment Group, Inc.,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the Middles District of Tennessee

**REPLY BRIEF OF THE APPELLANT
CHRISTIE ANDREWS
(CORRECTED)**

Daniel Arciniegas (BPR No. 035853)
Arciniegas Law
1242 Old Hillsboro Road
The Atrium Building
Franklin, Tennessee 37069
(629)777-5339

David Weatherman (BPR 29466)
The Weatherman Firm
1242 Old Hillsboro Road
The Atrium Building
Franklin, Tennessee 37069
(615) 538-7555

Counsel for Appellant Christie Andrews

## Table of Contents

**Table of Authorities** ...................................................................................................3

I.      Summary of Appellee's Response..................................................................4

II.     Argument .........................................................................................................4

A.     **The district court failed to apply a direct evidence analysis of Andrews' case and incorrectly determined that Andrews could not make a prima facie case.**..................................................................................................4

        1.    Andrews has direct evidence of discrimination. ...........................5
        2.    Andrews makes a prima facie case of discrimination. ..................6

B.     **Andrews did not waive her claims relating to her compromised immune system.** 8

C.     **Tri Star has record of Andrews' disability and regarded Andrews as disabled.** ..............................................................................................9

D.     **Tri Stars' reliance on outdated case law fails because the outdated case law was the only case law used to support the conclusion that Andrews was not disabled.** .......................................................................10

E.     **Tri Star failed to engage in the interactive reasonable accommodation process.** 11

III.    Conclusion.....................................................................................................14

**Certificate Of Compliance With Type-Volume Limitation, Typeface Requirements, And Type Style Requirements** ...................................................15

**Certificate of Service** ................................................................................................16

# Table of Authorities

### CASES

*EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001) ...................... 8

*Keith v. Cnty. of Oakland*, 703 F.3d 918, 927 (6th Cir. 2013) ................................ 12

*Milam v. ASCAP*, No. 3:23- cv-00238, 2023 U.S. Dist. LEXIS 155201, (M.D. Tenn. Sept. 1, 2023.) ................................................................................................ 8

*Sutton v. United Air Lines*, 527 U.S. 471 (1999) ...................................................... 11

*Toyota Motor Mfg., KY, Inc. v. Williams*, 534 U.S. 184 (2002) .............................. 11

### REGULATIONS

29 C.F.R. § 1630.2 (n) .............................................................................................. 13

I.   **Summary of Appellee's Response**

Tri Star argues that the district court used the correct legal standard when granting their motion for Summary Judgment. Tri Star addresses both the direct evidence analysis and the indirect evidence or *prima facie* analysis. Tri Star then looks at both the "record of" and "regarded as" methods of determining disability. Next, Tri Star defends the district court's reliance on outdated case law to determine whether Appellant Christie Andrews ("Andrews" or "Appellant") was disabled. Finally, Tri Star argues that the reduction in force was not pretext and that Andrews was not entitled to any reasonable accommodations.

II.  **Argument**

This case is unique because the challenged employment actions took place at the time COVID-19 pandemic was declared a global pandemic. The contemporaneous business records show Tri Star knew Andrews' asthma impaired her immune system.

   A.   **The district court failed to apply a direct evidence analysis of Andrews' case and incorrectly determined that Andrews could not make a prima facie case.**

As stated in Appellant's initial brief, the district court failed to analyze whether there existed direct evidence of discrimination. In its response, Tri Star does not justify this failure and makes no mention of the deposition testimony and documentary evidence Andrews presents supporting the direct evidence

4

argument. Furthermore, Tri Star obscures Andrews' indirect evidence argument by redirecting the focus to the impact of Andrews' asthma on her breathing, and ignoring it was her asthma the infectious respiratory COVID-19 that led her to request to work from home.

### 1. Andrews has direct evidence of discrimination.

The district court refused to consider the evidence that Andrews submitted was direct evidence of discrimination. Tri Star's responses claims that "there is no evidence that Tri Star's failure to accommodate [Andrews] is, itself, direct evidence." (Brief of Appellee Doc. 18, p. 22.) The direct evidence are Tri Star's own contemporaneous business records.

Tri Star represented it would consider work from home requests as possible accommodation. Tri Star requested that doctor's notes be submitted along with the requests. Andrews followed Tri Star's requests and provided a doctor's note with her diagnosis of asthma linking the request to work from home with the rising risk from COVID-19. Tri Star placed Andrews in the "Compromised Immune System" category. (Plaintiff's Evidentiary Submission, RE 48-2 Page ID 593-595.)

Tri Star admits it did not engage in the interactive process before terminating Andrews' employment. It is undisputed that Tri Star did not engage in

5

the interactive accommodation process. It is undisputed that Tri Star failed to offer Andrews a reasonable accommodation. It is undisputed that Andrews' request for reasonable accommodation caused her continued employment to be put into question. But for Andrews submitting the request to work from home and her doctor's note Andrews' employment would not have ended when it did.

### 2. Andrews makes a prima facie case of discrimination.

Andrews relies on its initial brief for the argument that she made a *prima facie* case of discrimination. In the context of the pandemic, Tri Star's letter makes it clear what the issues are:

> There are a few instances that will be given WFH preference which are: School Closings and Employees or Spouse/Partner/Significant Others/Roommates with **compromised immune systems**. Those who are affected by either of these will be accommodated to the best of our ability. An **accommodation** may include a change in schedule or the issuance of a Tri Star laptop.

(P's Evidentiary Submission RE 48-1, PageID 567.)

### a. Tri Star should have recognized from the outset of this case that Andrews' asthma and compromised immune system were the primary issues.

Tri Star knew Andrews was requesting to work from home because she was "immunocompromised" and had a "compromised immune system." These two terms both fall in the category of "restrictions arising out/or of or resulting from the disability" language in the Complaint. (Complaint RE 1 PageID 9, ¶58.).

6

Andrews' breathing had little if any impact on her request to work from home. This is also reflected in several emails, including the Tri Star CEO Lou Taylor's communications indicating Andrews would be laid off. The district court did not consider this position and made all inferences in favor of Tri Star.

> **b. Tri Star ignored Andrews' deposition testimony clarifying the special risk COVID-19 presented to her due to her asthma and medication.**

Andrews' testimony during discovery clarified her reason for requesting a reasonable accommodation. In her deposition, Andrews testified that she used steroid medication for her asthma. (Andrews Dep., RE 49-1, PageID 722) She also testifies that the steroid medication made her more susceptible to COVID-19 and the effects of the virus. (Andrews Dep. RE 49-1 PageID ## 748, 781, and 788.) Tri Star does not present evidence contravening this testimony. Similarly, the Tri Star court only addresses use of her inhaler in the context of "breathing" rather than the context of her testimony that it compromised her immune system. The district court erred in not making reasonable inferences based on Andrews' testimony and without consideration of Tri Star's failure to show there is no genuine dispute of these fact.

**B.     Andrews did not waive her claims relating to her compromised immune system.**

Tri Star's argument on the issue of "waiver," is also not well made. Andrews is not making a new claim at the summary judgment stage. Andrews always claimed Defendant violated the Americans with Disabilities Act based on her impairment of asthma. The Sixth Circuit has held that "so long as the complaint notifies the defendant of the claimed impairment, the substantially limited major life activity need not be specifically identified in the pleading." *EEOC v. J. H. Routh Packing Co.*, 246 F.3d 850, 854 (6th Cir. 2001) (the court reversed the district court's grant of motion for judgment on the pleadings).

If a specific major life activity need not be identified in the Complaint at the motion to dismiss stage, it does not make sense for courts to require it at the summary judgment stage. Tri Star argues that the specific major life function of the immune system is waived by reciting to the district court's position. Tri Star argues that Andrews' use of *Milam* case does not apply because the *Milam* court addressed a motion to dismiss and not a summary judgment motion. *Milam v. ASCAP*, No. 3:23- cv-00238, 2023 U.S. Dist. LEXIS 155201, (M.D. Tenn. Sept. 1, 2023.)

The Complaint indicates the impairment at issue as asthma and quotes Andrew's healthcare provider note stating her asthma put her at risk. Andrews'

complaint stated, "Plaintiff's disability being asthma and pulmonary issues and the physical limitations and/or restrictions arising out/or of or resulting from the disability." (RE 1, Page ID # 9 ¶58). This should be more than sufficient, especially considering all the other facts. The district failed to view these allegations in the light most favorable to plaintiff.

### C. Tri Star has record of Andrews' disability and regarded Andrews as disabled.

Tri Star addresses Andrews' argument on the issue of "record of disability." Tri Star seems to argue that Andrews' reliance on *Cady v. Remington Arms Co.*, fails because Tri Star did not have sufficient relevant information about Andrews' asthma, 665 Fed. Appx. 413, 417 (6th Cir. 2016). The *Cady* case states, "Relevant information could include, among other things, a diagnosis, a treatment plan, apparent severe symptoms, and physician-imposed work restrictions." *Id*. at 417. Tri Star had relevant information in the form of a diagnosis and physician-imposed work restrictions. Tri Star also stated in its own documents that Andrews was requesting to work from home because her asthma compromised her immune system. More importantly, as stated throughout, Tri Star listed Andrews as having a "Compromised Immune System" and as having valid medical records and a valid concern. (P.'s Evidentiary Submission, RE 48-2, Page ID # 600.) This reasoning also supports Andrews' "regarded as" argument.

In Tri Star's brief, they specifically state that CEO Lou Taylor, the alleged decision maker, did not regard Andrews "to actually *be* immunocompromised." (Brief of Appellee, Doc. 18, PageID 40.) When Tri Star placed Andrews in the "compromised immune system" category, they did so on their own accord and the record shows that Taylor was aware of this before the decision to terminate was made. Taylor's testimony of her perceptions of Andrews' condition turns on credibility and should be decided by a jury. Even so, the law doesn't require actual knowledge of a disability:

An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity. 42 U.S.C.A. § 12102 (3)(A). The evidence shows that Andrews was subjected to a prohibited action (her termination) based on Tri Star's perception that she had a compromised immune system.

### D. Tri Stars' reliance on outdated case law fails because the outdated case law was the only case law used to support the conclusion that Andrews was not disabled.

Tri Star argues that "Andrews has not articulated a reason why pre-amendment case law should not, at a minimum, be persuasive." (Brief of Appellee, Doc. 18, PageID 34.) Andrews does not argue that the case law cannot be

10

persuasive. Andrews' point here is that the court directly applied pre-Amendment case law to support its reasoning that Andrews' asthma was not disabling. While numerous cases were cited, the court used pre-Amendment case law almost exclusively for guidance on the issue of disability. This reliance is more than merely persuasive—it is foundational to Tri Star's argument and the district court's opinion.

Congress enacted the Americans with Disabilities Act Amendments Act to correct prior district court analysis evaluating whether an individual has a disability and "substantial impairment." The ADAAA unequivocally rejects the progeny of *Sutton v. United Air Lines*, 527 U.S. 471 (1999) and *Toyota Motor Mfg., KY, Inc. v. Williams*, 534 U.S. 184 (2002). Here the district court's individualized analysis was almost exclusively based on cases falling within the progeny of these rejected cases. The district court failed to provide adequate explanation how these cases maintain persuasive weight in light of the ADAAA and the updated CFRs.

### E.  Tri Star failed to engage in the interactive reasonable accommodation process.

Tri Star faults Andrews for their own failures and omissions. When Andrews submitted her request for reasonable accommodation, the ADA required Tri Star to engage in the interactive process. The interactive process requires an

11

individualized inquiry. It is undisputed that Tri Star did not engage in the interactive process before terminating Andrews' employment. This failure resulted in a lack of facts and evidence to support Tri Star's position. "The reasonableness of a requested accommodation is generally a question of fact." *Keith v. Cnty. of Oakland*, 703 F.3d 918, 927 (6th Cir. 2013) (citing *Haschmann v. Time Warner Ent. Co.*, 151 F.3d 591, 601 (7th Cir. 1998) (denying employer's motion for summary judgment)).

 First, Tri Star attempts to justify its failure to interact by claiming that the reduction in force was not pretext to target Andrews. A proper analysis, however, should examine Andrews' termination in light of her request for a reasonable accommodation regardless of the justification for the reduction in force. Because there was no interactive process, Tri Star has no evidence to support their decision. Tri Star did not evaluate the reasonableness of Andrews' request from an economic standpoint. Accommodating Andrews would have resulted in minimal costs. What the evidence shows is that Andrews was already well equipped to work from home and had been doing so regularly prior to the pandemic. (Andrews Dep. RE 40-1, Page ID # 359.)(*See also* P.'s Evidentiary Submission, RE 48-1, PageID 587 (Brian Luecke stated, "She [Andrews] has the ability work from since she has a laptop primarily for AMEX support after hours . . . I would recommend that you offer up a work from home

situation . . .") Tri Star's argument that the decision to terminate her was economic fails to consider these facts in a light favorable to Andrews.

Tri Star did not evaluate whether Andrews' request was permanent or exclusive. Andrews' provider note did not state that working from home was the only possible accommodation nor that it was permanent. In the context of the COVID-19 pandemic, a temporary accommodation could have been reasonable. The duration of the reasonable accommodation was not defined because Tri Star failed to engage in an interactive process.

There is no evidence that Tri Star engaged in discussions to clarify what Andrews' functional limitations were or how her job duties would be impacted. Determining whether job functions are essential or non-essential is not an arbitrary process Essential Functions are addressed at 29 C.F.R. § 1630.2 (n). While "[t]he employer's judgment as to which functions are essential" is part of the analysis, it is still a requirement of engaging in the interactive process. *Id*. There is no evidence that Tri Star evaluated Andrews' job duties in this context.

The evidence shows that Tri Star represented it would consider requests to work from home as a potential accommodation. It solicited these requests from its employees. Tri Star also requested doctor's notes to support employee requests, clearly pointing to a medical basis for these accommodations. Whether Tri

13

Star recognized employee responses as requests for reasonable accommodation under the ADA is inconsequential because the law says they are.

### III. Conclusion

For the foregoing reasons, Andrews respectfully requests that the Court reverse the judgment of the district granting Tri Star's motion for summary judgment.

s/David Weatherman
David Weatherman (TBPR 029446)

**Certificate Of Compliance With Type-Volume Limitation, Typeface Requirements, And Type Style Requirements**

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) because the brief contains 2,266 words, as determined by the word-count function of Microsoft Word 2016, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and this Court's Rule 32(b)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word for Mac in 14-point Times New Roman font.

/s/ David Weatherman
David Weatherman (BPR 29466)

## Certificate of Service

      I hereby certify that, on Friday, January 10, 2024, I caused the foregoing brief and addendum to be filed electronically with the Court, where they are available for viewing and downloading from the Court's ECF system, and that such electronic filing automatically generates a notice of electronic filing constituting service. I certify that all parties required to be served have been served.

Tara L. Swafford, BPR # 17577
Thomas Anthony Swafford, BPR # 17578Elizabeth G. Hart, BPR # 030070
The Swafford Law Firm, PLLC
207 Third Avenue North
Franklin, Tennessee 37064
Tel: (615) 599-8406
Fax: (615) 807-2355
Tara@swaffordlawfirm.com
Tony@swaffordlawfirm.com
Betsy@swaffordlawfirm.com

Attorneys for Tri Star Sports and EntertainmentGroup, Inc.

                                              /s/ David Weatherman
                                              David Weatherman (BPR 29466)